Our second case for this morning is Winebow, Inc. v. Capitol-Husting, Inc. and others. And, Mr. Schreiner, we will hear from you when you're ready. Good morning, Your Honors. Good morning. Chief Judge Wood, and may it please the Court. Just to put this in context, because we very quickly get into language issues, this is a statutory interpretation question under Wisconsin law. My clients, Capitol-Husting and Left Bank, were for 11 years and 6 years, respectively, wholesalers of alcohol, beverages, as our statute quaintly refers to it, in Wisconsin for the plaintiff Winebow. Winebow is a plaintiff because it began a declaratory judgment action pretty promptly after it terminated them without notice and without cause. So if they're dealers, which is the issue in the case, if they have a dealership under Chapter 135, then the law has been violated, they're entitled to remedies. But the issue before the Court arises because the amendments to the Wisconsin Fair Dealership Law that were enacted by the legislature in 1999 were part of one of these massive budget bills, appropriation bills, that our legislature is addicted to, has been for a long time, and which the governor in our state has the right to veto in part. And so the issue presented for the Court today is what was left, and under that statute that was left, are the defendants, do they have a dealership? And just to be perfectly clear, we're just talking about the per se dealership theory. We're not talking about community of interest, which at some point could be proven by anybody. We sued on both. Judge Rand had decided that we didn't qualify under the per se dealership sub B. His opinion was a little unclear about whether he also thought it applied to A. The plaintiff moved for judgment on the pleadings. While that was pending, the case was passed to the magistrate judge who resolved the issue by saying no, he didn't decide that there was no claim under 135.02 sub 3A at all. And first of all, I'm not going to reconsider what Judge Rand had decided. Secondly, he didn't decide this. And at that point, in order to come to this court, we dropped our 132 sub 3A claim with prejudice in order to make a final judgment that we could appeal from. Perfectly fine. So the simple question, and Magistrate Judge Jones saw it this way. If you look at 135.066.2, the part that the governor was red penciling, and you have a perfectly good definition of the kind of dealership that's involved here with this minus wine idea. And alcoholic beverage regulation is not one of the more rational parts of American law. So, I mean, if they've done it that way in Wisconsin, I don't know why they can't. Well, it's interesting you say that, Your Honor. Obviously, the 21st Amendment gives the states lots of leeway to do lots of things. And Chapter 125, not 135, Chapter 125 is where Wisconsin has done that. I look at, I'm going to get here, 066. You can just call it 066. 066, right. I look at 066, and I see something called definition. Intoxicating liquor has the meaning given 08 or 02 sub 8 minus wine. That's really all that I see in that statute. So why isn't that a definition for purposes of dealership? I mean, the problem with your approach that I have is that it's very convoluted. And it doesn't seem to me, well, first of all, it actually drains 066 of most meaning. But by the time we're going to the Green Bay Press-Gazette and so on to try to bolster this other approach where it's liquor and wine, and I guess beer has never been in there, so beer is off on the side. It just seems quite strange to me. It's pretty easy to read the statute to say, well, 135.066 is where the definition is. Wine isn't going to be in the per se category. There are reasons why somebody might want to do that. I'm certainly not going to tell you what Governor Thompson was thinking about, but that's what he did, right? Two things, Your Honor. First, it doesn't leave 135.066 meaningless. It applies to hard liquor dealerships. He was unwilling to veto that part of 135.02 sub 3B. That's 66.4 or 66.5? No. The question that Judge Wood had was also mine. What does 66.2A apply to? It applies to 66. It applies to 66.1, which still applies to the dealerships created in 3B for hard liquor dealerships, which weren't previously per se dealerships without any question. Nobody questions that. That part the governor wasn't willing to veto. I start, first of all, and I say this isn't the only definition. 02 is a definition. It's part of the definition statute. Counsel, the problem is that so far as I can see, 66 sub 1 doesn't do anything. It's labeled legislative findings. It doesn't have any bite. You don't want to read sub 2 as being a definition for the purpose of legislative findings. That would make this completely cuckoo land. Well, it's close, but I don't. It is. They are findings that would be applicable if there were a dispute about the termination of a hard liquor dealership. The legislature put them in there. Could I ask a different question? In the 18 years since this curious use of the single word veto, have there been any state adjudications, either administrative or judicial, about what this did in fact? There is no administrative structure in which there could be, and there have been none that we've been able to find in trial courts or anywhere else. This issue hasn't been raised. Apparently, no. I wonder whether it makes sense for the federal court to wade into this, which seems to have a lot to do with the peculiarities of the veto process in Wisconsin. The alternative would be to ask the Supreme Court of Wisconsin. Would that make sense? Your Honor, I thought you or one of the other judges might ask that question. It, of course, occurred to us to raise it at the time when we were on appeal and filing our appellate brief. And, frankly, the principal reason we didn't do it is we were already two years into this litigation, which is expensive. And if we go to the Wisconsin Supreme Court, we'll spend another year or so before we find the answer. It was an entirely mercenary view, I think rational. But my question was, would it be more rational for us to boot this back to the state courts? You might well think so. I'll answer that as squarely as I can. From an institutional point of view, I think that makes a lot of sense. From a party's point of view, and obviously from the other side, which didn't ask for it, it was filed in federal court to begin with. This case could well have been filed in state court, and we would be there by now, perhaps. Well, that's the problem, actually. This is not the first time we've run into the Wisconsin Fair Dealer Act having a terrible dearth of Wisconsin authority because people file in diversity, and the federal courts are constantly there where we probably are not most useful. Grantors have a tendency to be somewhere else, to terminate because they don't have these laws in their state or they're not well advised or whatever the fact may be, and they find themselves in court when they terminate, and they find out about the law when they get served with a temporary restraining order, preventing the termination of the dealership. So that's where we were headed when they decided to bring a declaratory judgment action in federal court. But if you are in federal court, even if it's a one-way ticket, one day, one way, I guess I'll go back to the approach that the magistrate judge took, which was that, first of all, he noted the problem that Judge Easterbrook has alluded to and that's worried me, that having a definition that applies solely to legislative findings and then on the assumption that there's somehow some bite in later litigation is an awfully weak thing. On the other hand, it seems to me in Wisconsin, both the legislature and the governor have a role in the ultimate legislation that gets passed. The governor was aware of that, did what he did, and so this is what we're left with, not the neatest of statutes, but it seems to me the most straightforward thing is to say the 066 definition applies to dealerships. But why not the definition in 02? That is also a definition. It specifically incorporates by reference a wholesaler defined in 125.02.21 as who a dealer is. And that definition takes you ineluctably to the conclusion that a wine wholesaler, like my clients, is a dealer. That definition is as good as 066. It's not as specific, for one thing, and it requires reading 066 out of the statute. Well, it doesn't require reading it out. Again, why is this? 066 definition was there for the reasons that were vetoed, so that even if there isn't a dealership lawsuit, there would be certain consequences to transfer of the ownership of the grantor or to change in ownership of the grantee. The governor took all of those out. The reason it's high and dry is that he vetoed the rest of the substantive provisions of 066, other than the legislative findings. But he didn't veto because he couldn't. I'm sure he would have loved to find a way to work his way into 023B and get wine dealers out of there, too. But he couldn't do it. And he approved what's in 03B. And wine dealers are still in, insofar as community of interest protections are there. There's a different avenue that would protect wine dealers under the Fair Dealership Law. Except historically that's proved very tough, which is why the legislature did what it did. I understand that. I mean, it's not the crispest of definitions. And we've seen these cases. But there it is. Wisconsin has put it in. Well, I think, if I may, 135.023B is a crisp definition of who a dealer is. It is a wholesaler, as defined in 125.021. That's in the law, who's granted a right to distribute intoxicating liquor. If you go to 125.0221, you see a definition that tells you it's someone who sells at wholesale to retailers alcohol beverages. But there's a cross-reference, isn't there, to 0.066? Only on who it doesn't apply to at the bottom. That's only for the small dealers. Okay. May I reserve some rebuttal time, Your Honor? Certainly, you may. Mr. Poore. May it please the Court. Once the sausage is made, that's what's on the menu. And what's on the menu is what counts here. We'll put it another way. Legislative history, dictionary definitions don't create ambiguity. Well, and Mr. Schreiner wasn't, to his great credit, talking about too much of the legislative history, other than the fact that it's very plain that this came about because of the governor's line-item veto. But what do you do, especially if you're a federal court, when there are two arguably contradictory definitions of the same critical term in a statute? What you do is what the District Court and Magistrate Jones did, is you look at the definition of what we're here about, and that is intoxicating liquor. And what better place to find the definition of intoxicating liquor in this statute than under the very definition in 0.66, which says it means minus wine? Yeah, but it doesn't say for what purpose, right? You would have an absolutely compelling argument if it said for the purpose of this chapter, chapter 135, it means intoxicating liquor minus wine. But it doesn't say. That's the critical ambiguity. Is it for the purpose of the whole chapter, or is it for the purpose of sub-66? And it doesn't tell us. And there we are. And so what we have is the familiar presumption that the same term, and this is a defined term, there's no question about that, the same term has the same meaning in the same statute unless there is some real evidence that a contrary attempt was attempted. Well, you don't want to say same statute because we are dealing with three different statutes enacted at three different times. Two of the three are in the same chapter, right? But what you want is a rule that whatever definition there is in 066 applies to the whole chapter. Correct. And it doesn't say that. And you can't get there by saying words in the same statute enacted at the same time must have the same meaning because they aren't the same statute. They're only the same chapter. The same chapter. But they are read together. And in this case, that assumes the conclusion. Yeah, that is the conclusion. 125.028, you'll agree, is sort of the hard liquor plus wine definition basically. Correct. It keeps beer out, I will say for odd reasons, not surely because they don't think beer is intoxicating. But then 135.066 says intoxicating liquor has the meaning in 125.028 minus wine. And so you don't know, reading those, which is going to apply to which aspect of the regulation. Well, if we go back to the definition of dealership in 002, that defines a dealership and it uses the term intoxicating liquor. And when the governor got out his pen, that originally had the reference to 125. He struck that. So when you look at that in tandem with what the governor did in 066. So your argument has to be, okay, for dealerships at least, I don't know for what else, but for dealerships, his act, this does require, by the way, a little bit of legislative history. So two can play that game. But the deletion of 125.028 and the residual 135.066.2, I think I'm getting that right, leaves you with the narrow definition. In Wisconsin, by the way, do grocery stores distribute, can they sell wine, can they sell beer, can they sell hard liquors, or 7-Elevens? As an Illinois resident, I have to plead ignorance on that. I mean, sometimes, well, you know, and states do it all sorts of ways. I'm just wondering idly whether there's some actual rationale for carving wine out other than just maybe Governor Thompson was a wine fan. I don't know. And I think this, you know, coming back to why he did it, I mean, there's no evidence in 1999 why he did it. We do know what he did, and that is he struck the reference to 125 in 02. There's no question about that. So that meant the definition of intoxicating liquor is there without any kind of limitation or restriction, and the only definition in the chapter is what you find in 066, and that's unambiguous, minus wine. And so when we think about legislative history here, what counts really is what the governor as a co-equal or what the Wisconsin Supreme Court has described as a quasi-legislator did in 1999. It's not what the original statute was, but it's what the governor eventually did. If we're going to look at any kind of legislative history, that's what we should look at, and there it's unmistakable. He created a new definition, minus wine, in 066, and he struck the reference in 02 to 125. So we can talk all about 125 and how it had its own definition. That's not what the governor did here, and under the Wisconsin Constitution, he had every right to do that, as the Wisconsin Supreme Court has described in cases such as Wisconsin Senate v. Thompson, which we cite in our brief. So 066 in general is the one that's entitled intoxicating liquor dealerships, so it addresses the dealership question. The 02 refers to a list of definitions, dealerships there. It has the term intoxicating liquor. But the title of 135.066 is what? It says definitions under sub 2, and then it says intoxicating liquors means minus. No, the title of the whole section is intoxicating liquor dealerships. It's intoxicating liquor dealerships. And the problem is that the governor vetoed out of it essentially everything having to do with intoxicating liquor dealerships, leaving the legislative findings in sub 1. And the definition. The definition in sub 2 and a statement of non-applicability in sub 5. So those things in sub 5 are out. 1 doesn't do anything, and that leaves the definition, which doesn't have any apparent scope. Well, it does in this sense, Your Honor, because the governor, as the Wisconsin Supreme Court has said, has the constitutional power, and the Wisconsin Supreme Court has described that as broad. Maybe it's the broadest of any governor in the nation. It's so broad there was once a lawsuit filed contending that as a result of that power, Wisconsin does not have a republican form of government. We held that that was not justiciable. And in this case, we have the Wisconsin Supreme Court reinforcing the idea that what the governor can do is, in the words of the Wisconsin Supreme Court, disassemble what the legislature has assembled. And that's what the governor did. He took a definition. We understand that. The question is what did he leave on the floor? I mean, you know, he took a lot apart. We can see that. And if he left enough for this court to make a decision about whether wine dealerships are in the per se category under the Fair Dealer Act, then that's one outcome. And if we can say they're not, you know, the only way you can prove a wine dealership is a dealership for the statute is community of interest, that would be another outcome. Or maybe you'd like to say a word about the possibility of our certifying, which had certainly crossed my mind as well. Well, let me address the first question, Your Honor. What remains, I mean, when we look at 066, he took a very broad sweep with the pen. Yes, he did. We know that. But that's not inconsistent with his constitutional power as a governor. It's not a question of that, in my mind anyway. It's a question of can I figure out what the language he left in 135.0662 applies to, and does it reach back into the rest of the statute? Now, you've made the words mean the same thing everywhere argument, and you want us to start with 066 too, and maybe there are reasons one would do that, but, you know, we need to hear them and we need to. And just to come back to the idea that not only should we look at what he did in 066, we have to look at what he did in 02. And in 02, wine was in the bill that the legislature passed. And it's important to remember that when it came to 02, he struck the reference to 125, meaning that wine came out when the governor was done with his pencil on 02. That's how this all fits together, and why intoxicating liquor that has any meaning has to have the meaning that the governor gave it when he did those two things. Now, I also want to address Your Honor's question about certification. That's obviously come to our mind as well. If this was an issue about the governor's authority under the Wisconsin Constitution, that might be something. But the distributors have said from the beginning, this is a matter of statutory interpretation. We'll take them at their word on that, that it is a matter of statutory interpretation, and federal courts interpret state laws all the time. We do, but not authoritatively. And the Wisconsin Supreme Court certainly has, I would think, within its power, the ability to take these conflicting arguments, decide which method of statutory interpretation it prefers to use, and how it comes out. I mean, there can't be a question that the Wisconsin Supreme Court could resolve this once and for all. But in terms of where we are today, I think both sides have been at this for two years. I think we'd both like a final judicial determination of this. And I would just come back to the principle that federal courts decide state law issues, even state law issues that are unsettled. And I would just also reinforce that there's never been a challenge to the governor's constitutional authority under the Wisconsin Constitution, which would be a more compelling reason to certify it, as opposed to simply how should we interpret this as a matter of statutory interpretation. Okay. So unless the court has any further questions. Apparently not. We would ask that the district court's judgment be affirmed. All right, thank you. And Mr. Schreiner. I'll take a minute, if I may, and first start off by adding what will probably be my chief contribution to the discussion today in informing Your Honor that you can buy beer, wine, liquor in grocery stores and 7-Elevens in Wisconsin. Okay. These are important issues. I remember in law school in Bloomington, Indiana, having to drive to Illinois to get beer on Sunday because you couldn't do that in Indiana. So these are issues at the time. I think you can now. My friend misspoke a bit when he, indulging in what he calls legislative history and doesn't like otherwise, asked you to look at what Governor struck out of 135.023B. He said he struck out the reference to Chapter 125. He struck out one of the references to Chapter 125, but he didn't strike out the meaningful one from my point of view, which is who is a dealer? Well, it's a wholesaler as defined in 125.0221. Now, he didn't do that because he wanted hard liquor dealers to have the protection of the dealership statute, and I don't know why, but that's what he left. So that's where I start with the definition. That sends you right into Chapter 125 to tell you who a dealer is and where we're at. So as for certification, if you're going to rule in our favor, please don't certify it, but if you aren't, I think it's appropriate. I'm sure that both sides have a ranking, win, certify, lose. I'm just trying to be honest. I think it otherwise, frankly, meets the criteria of what American Family and Pate and the case that you sent to Wisconsin in 1998 on Badger Lines. I think it does meet the criteria, and that's probably certainly the last. We're not challenging the governor's veto power. We're just challenging what he did, and everybody, my friend in particular, focuses on what the governor's intent was. His intent is no more relevant than any legislator's intent. He is not the third house of the legislature. He's got something he can do, and then he's done, but he has to do it in a negative way. He can't add language. He would love to have, you know, Judge Eastbrook, you talked about,  No, it used to say in this section. He took it out. He's got a negative power. He would love to have been able to write that in, but the Constitution doesn't let him do it. Thank you, Your Honor. Thank you very much. Thanks to both counsel. We'll take the case under advisement.